**Affirm in part; Reverse and Render in part and Opinion Filed October 23, 2024**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-22-01160-CV**

**WORLD FOOD IMPORTS, INC. AND
KGF WORLD FOOD WAREHOUSE, INC., Appellants**
**V.**
**HHO UNITED GROUP, INC., AS ASSIGNEE OF NIHAYA QADDURA,
AND SHARIF CHOUDHURY, Appellees**

**On Appeal from the 191st Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-15-05428**

## MEMORANDUM OPINION

Before Justices Partida-Kipness, Reichek, and Breedlove
Opinion by Justice Reichek

This case involves a contract for the sale of a Houston specialty grocery store that did not close. The Dallas buyer sued the sellers for breach of contract and sought specific performance. The buyer's broker also sought to enforce the contract as a third-party beneficiary and recover his commission. A jury returned a verdict in favor of the buyer and its broker. In accordance with the jury's verdict, the trial court ordered specific performance of the contract, awarded the buyer lost profits,

and ordered the sellers to pay the broker his commission after closing. The judgment also awards both the buyer and broker attorney's fees, costs, and interest. In this appeal, the sellers contend the evidence is insufficient to support the jury's verdict and also complain of other alleged errors, including jury-charge error and the trial court's exclusion of witnesses. For reasons that follow, we reverse the award of lost profits damages to the buyer and render judgment deleting that award. We also reverse the awards of pre- and postjudgment interest to the broker on his commission and render judgment deleting those awards. In all other respects, we affirm the trial court's judgment.

## Background

Appellants World Food Imports, Inc. and KGF World Food Warehouse, Inc. own an Indian/Pakistani supermarket in Houston.[1] Mashood Kaiser, who died in April 2019 before the case went to trial, was the president and owner of World Food Imports and KGF World Food Warehouse (collectively "the Kaiser Companies"). Mashood agreed to sell the grocery store and real estate to Nihaya Qaddura, the owner of appellee HHO United Group, Inc. HHO owns three grocery stores in the DFW area. HHO operated one store, and different family companies operated the other two. Nihaya is president of all the companies. Shoukry Qaddura, Nihaya's

---

[1] World Food Imports owns the real estate, and KGF World Food Warehouse owns and operates the grocery store.

brother-in-law and his brother run the stores. The Qaddura family has been in grocery business since 1992 and previously bought two of its grocery stores from Mashood.

Shoukry was the primary representative for the Qaddura family that negotiated the contract with Mashood. Although Nihaya signed the contract, she never spoke to Mashood about the contract and was not familiar with its terms. She later assigned her interest in the contract to HHO. Appellee Sharif Choudhury acted as HHO's broker for the purchase of the Houston store and drafted the contract.

The contract between HHO and the Kaiser Companies is comprised of five documents: a standard form Texas Association of Realtors Commercial Contract, a Commercial Contract Financing Addendum, and three Commercial Contract Amendments. In October 2014, the Kaiser Companies and Nihaya signed the Commercial Contract for the sale of the property, as well as the addendum and first amendment. The purchase price was $6.6 million, and the contract was contingent upon Nihaya obtaining third-party financing secured by the property. The parties agreed the sale price would include $700,000 worth of inventory. The first amendment provided: "SELL PRICE $6,600,000.00 INCLUDED $700,000.00 INVENTORY AT WHOLESALE PRICE TO BUYER. SAID INVENTORY LIST/ITEMS TO BE MUTUALLY AGREED BY BUYER AND SELLER." The Commercial Contract contained a similar provision.

In addition, the contract required the Kaiser Companies to pay Choudhury's broker's fee. It provided, "AT CLOSING, SELLER TO PAY FROM SELLERS SALE PROCEED DIRECTLY FROM TITLE COMPANY . . . BROKERS FEE $850,000." The contract was later amended twice to extend the closing date, with a final closing date of March 31, 2015.

HHO obtained funding from Synergy Bank for the purchase. Synergy Bank offered Nihaya a conditional commitment to finance a $5 million Small Business Administration ("SBA") loan. The bank also offered Nihaya a conditional commitment to finance a $1,650,000 conventional loan. She accepted both offers. The SBA loan was to cover the purchase of the Houston property—the land, building, and the business itself—and the conventional loan was to refinance other real estate of the borrower's in Dallas and give them some "cash out for their equity." The two loans shared a lien interest.

The Qaddura family was going to form a new company, World Gourmet Houston, in connection with the Houston store. HHO would own the store, and the new company would rent the store.

As the closing date approached, Mashood was admitted to the hospital on February 27, 2015, and remained there for about a month.

Evidence showed that in addition to the contract requirement that the parties mutually agree on $700,000 worth of inventory, the lender required an inventory.

The bank arranged for an inventory by a professional company to take place at the store on the afternoon of March 26. On March 25, Shoukry and several others went to the Houston store for the inventory. When they arrived they saw Mashood's wife Maria and told her why they were there. She was surprised to learn about the sale of the store; Mashood had not told her about it. She told Shoukry to deal with the store managers and left. When she returned after a couple of hours, Shoukry and the others were in the back storage area using a forklift to check expiration dates on boxes of merchandise. She told them they needed to leave that part of the store and wait for her in the front. When she failed to show up, they left. Kinjal Chheda ("KC"), a CPA for the Kaiser Companies who was acting as store manager while Mashood was out, called Shoukry later that day and told him to come back. Shoukry and the others went back and waited again for Maria, but she never arrived. That night, KC emailed the lawyer for Mashood and the Kaiser Companies, Henry Ackels, to get his approval for the inventory that was supposed to take place the next day at 1:00 p.m.

Shoukry went back to the store the next morning by himself. Another employee gave him Ackels's phone number and told him Ackels wanted to speak to him. Shoukry called Ackels, who said, "[I]t's not going to be no inventory, it's not going to be no sale." Ackels told Shoukry if he did not leave the store Ackels would

call the police. Shoukry called the inventory company to cancel and returned to Dallas.

Over the next few days, Shoukry spoke to Ackels several times. Ackels told him that he wanted to renegotiate the contract, including the price. Emails between Nancy Patterson, with Fidelity National Title Company, and Heather Sadler with Synergy Bank on March 27, 2015, show that Ackels called them both to say the Kaiser Companies were not going through with the deal because Mashood was very ill. On March 30, Ackels sent Nihaya a letter with a proposed amendment to the contract. He also sent a copy of those documents to Patterson at the title company. Ackels wanted to extend the closing date to July 31, 2015. In addition, the proposal included a list of four items the "Buyer and Seller must agree [to] in writing" before the new closing date. Shoukry described the items as new terms. He testified that if the Kaiser Companies had sought only an extension of time that would not have been a problem, but they wanted to renegotiate the contract. His family did not agree to the proposed terms, and Nihaya did not sign the proposed amendment.

On March 31, the day the Kaiser Companies were scheduled to sign closing documents with the title company, Ackels wrote to Patterson again, objecting to one of the closing documents. Ackels stated that "there should be no closing at this time" and "[a]ny attempted closing by the Buyer is bogus and inappropriate."

Shoukry, Nihaya, and Choudhury went to the title company for the closing on March 30. HHO signed all the closing documents. One of the documents was titled "Agreement of No Funding and Post Closing Compliance Agreement," and it contained a list of outstanding requirements that needed to be resolved before Synergy Bank would fund the loan, including the sellers' execution of the closing documents. The Kaiser Companies did not come to the closing, and the bank did not fund the loans.

In May of 2015, HHO, as assignee of Nihaya, filed its original petition against the Kaiser Companies. HHO alleged the Kaiser Companies breached the contract by failing to appear at closing and failing to convey the property. HHO requested "the equitable relief of specific performance" of the contract. In addition, HHO alleged that it lost significant "potential revenue that it would have received had the transaction been completed as anticipated." It prayed to recover "all losses incident and consequential to [the Kaiser Companies'] breach, including lost profits."

The Kaiser Companies filed a third-party petition against Choudhury, asserting various claims including misrepresentation, breach of contract, and fraud. Choudhury filed a counterclaim against the Kaiser Companies. He sought to enforce the contract as a third-party beneficiary and recover his commission.

After delays caused by Hurricane Harvey, an administrative abatement, and Covid, the case went to trial in April 2022. Although during the pendency of this

suit, there were other parties and other claims, only the contract issues between the parties to this appeal were submitted to the jury. HHO argued to the jury that the Kaiser Companies breached the contract by not closing the sale. The Kaiser Companies argued that they could not have breached because HHO never tendered the purchase money or mutually agreed to the inventory.

The jury charge contained six questions. The jury found that the Kaiser Companies failed to comply with the contract and that their failure to comply was not excused. It further found that HHO was at all times ready, willing, and able to perform under the contract. The jury also found that HHO's failure to tender payment under the contract on or before March 31, 2015, was excused by the Kaiser Companies' failure to perform a material provision of the contract or repudiation of the contract. The jury was asked to determine the amount of HHO's lost profits and found that amount was $3,877,583. Finally, the jury found that Choudhury was a third-party beneficiary to the contract.

In its judgment, the trial court ordered that HHO is entitled to specific performance of the contract. The court ordered the Kaiser Companies to "transfer ownership and operation of the Houston grocery business and accompanying real estate and all other contracted-for business assets to HHO, and [the Kaiser Companies] shall pay the broker commission of $850,000.00 (from the sales proceeds of $6,600,000.00) to Sharif Choudhury as he so directs." The court also

awarded damages in accordance with the jury's verdict, ordering the Kaiser Companies to pay lost profits damages of $3,877,583. The trial court awarded HHO and Choudhury attorney's fees and costs and conditional attorney's fees in the event of an appeal. The Court awarded HHO postjudgment interest on its lost profits damages and attorney's fees and costs. It awarded Choudhury prejudgment interest on his $850,000 commission at a rate of 6% from May 1, 2015 through the date of judgment, totaling just over $304,000, and postjudgment interest. The Kaiser companies filed a motion for new trial and moved for judgment notwithstanding the verdict. Their motions were overruled by operation of law.

In their appellate brief, the Kaiser Companies set out five issues, but they actually raise more issues than that. Instead of referring to their issues by number, we group them into categories by subject matter. The Kaiser Companies complain of: (1) the sufficiency of the evidence to support the jury's findings that they breached the contract; (2) the sufficiency of the evidence that HHO was entitled to specific performance; (3) the award of lost profits damages; (4) jury charge error in Questions 1 and 4; (5) error in excluding three of their witnesses; (6) the award of the broker fee to Choudhury as a third-party beneficiary; (7) the award of attorney's fees to HHO and Choudhury; and (8) the award of interest to HHO and Choudhury.

**Breach of Contract**

The Kaiser Companies first argue there is no evidence, or alternatively factually insufficient evidence, of the essential elements of breach of contract. The elements of a breach of contract claim are: (1) the existence of a valid contract; (2) performance or tender of performance; (3) breach by the defendant; and (4) damages resulting from the breach. *Oliphant Fin., LLC v. Galaviz*, 299 S.W.3d 829, 834 (Tex. App.—Dallas 2009, no pet.). The Kaiser Companies assert there is insufficient evidence of element 2 (HHO's performance or tender of performance) and element 3 (the Kaiser Companies' breach).

This issue concerns the jury's answers to Questions 1, 2, and 4. In Question 1, the jury found that the Kaiser Companies materially failed to comply with the contract. In Question 2, it found their failure to comply was not excused by HHO's previous failure to comply with a material obligation of the same agreement or prior repudiation of the agreement. In Question 4, the jury found that HHO's failure to tender payment under the contract on or before March 31 was excused by the Kaiser Companies' refusal to perform a material provision of the contract or repudiation of the contract.

It is undisputed that the Kaiser Companies did not attend the closing or convey the property to HHO. They contend their failure to close could not have been a breach of contract, however, because HHO had a simultaneous obligation to tender payment to the escrow agent at the closing. Thus, according to the Kaiser

Companies, because HHO did not tender payment, they did not breach.[2] In other words, they argue that because neither of the parties performed the closing, neither's failure is a breach. The Kaiser Companies also assert that prior to their failure to close, HHO repudiated the contract as a matter of law because it did not tender payment at closing, and thus at the very least, the Kaiser Companies' failure to comply should be excused. Finally, they argue that HHO's failure to tender payment was not excused by the Kaiser Companies' actions.

On an issue where the opposing party bears the burden of proof, we sustain a legal sufficiency challenge to an adverse finding if our review of the evidence demonstrates a complete absence of a vital fact, or if the evidence offered is no more than a scintilla. *Burbage v. Burbage*, 447 S.W.3d 249, 259 (Tex. 2014). More than a scintilla exists when the evidence would enable reasonable and fair-minded people to reach different conclusions. *Id.* We regard evidence that creates a mere surmise or suspicion of a vital fact as, in legal effect, no evidence. *Id.* We consider the evidence in the light most favorable to the judgment, crediting favorable evidence if reasonable jurors could, and disregarding contrary evidence unless reasonable jurors

---

[2] The Kaiser Companies contend that HHO had two theories of how the Kaiser Companies breached the contract: (1) not completing the closing and conveying the property and (2) refusing to allow HHO to perform an inventory. They also challenge the sufficiency of the evidence to show they breached by not permitting an inventory. But HHO's sole theory of breach as alleged in its live pleading was the Kaiser Companies' failure to close and convey the property. It was the Kaiser Companies who asserted the lack of a mutually agreed inventory as a defensive theory.

–11–

could not. *Id.* When a party attacks the factual sufficiency of the evidence on an adverse finding on an issue upon which the other party had the burden of proof, we examine all the evidence and set aside the judgment only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986).

Jurors are the sole judges of the credibility of the witnesses and the weight to give their testimony. *City of Keller v. Wilson*, 168 S.W.3d 802, 819 (Tex. 2005). Reviewing courts cannot impose their own opinions to the contrary. *Id.*

It is a general rule of equity jurisprudence in Texas that a party must show that it has complied with its obligations under a contract to be entitled to specific performance. *DiGiuseppe v. Lawler*, 269 S.W.3d 588, 594 (Tex. 2008). As a consequence, a plaintiff seeking specific performance, as a general rule, must actually tender performance as a prerequisite to obtaining specific performance. *Id.* A corollary to this rule is that when a defendant refuses to perform or repudiates a contract, the plaintiff may be excused from actually tendering its performance to the repudiating party before filing suit for specific performance. *Id.* In such a circumstance, a plaintiff seeking specific performance is excused from tendering performance pre-suit and may simply plead that performance would have been tendered but for the defendant's breach or repudiation. *Id.* A repudiation or anticipatory breach occurs when a party's conduct shows a fixed intention to

abandon, renounce, and refuse to perform the contract. *Harrison v. Blue Mountain Prop. Ventures LLC*, No. 05-23-00583-CV, 2024 WL 4457019, at \*5 (Tex. App.—Dallas Oct. 10, 2024, no pet. h.) (mem. op.). (citing *Hunter v. PriceKubecka, PLLC*, 339 S.W.3d 795, 802 (Tex. App.—Dallas 2011, no pet.)). The repudiation must be absolute and unconditional. *Id.*

Evidence showed that the Kaiser Companies did not merely fail to show up at closing. There was evidence that prior to the closing date, the Kaiser Companies announced their intention to refuse to perform under the agreement. By March 27, their attorney informed Synergy Bank, the title company, and HHO that they were not going to close, citing Mashood's illness. HHO's evidence suggested the Kaiser Companies did not want to close because Mashood had not told his wife about the sale and she opposed it. Then on March 30, Ackels sought an extension of the closing date and there was evidence the Kaiser Companies wanted to change the terms of the agreement. The evidence is sufficient to support the jury's finding that the Kaiser Companies materially failed to comply with the contract.

The Kaiser Companies contend that any failure to close the contract on their part was excused by HHO's prior conduct. They argue their breach was excused because HHO failed to comply with two material obligations under the contract: (1) failure to pay or tender the purchase price to the escrow agent at closing, and (2) failure to mutually agree on the inventory.

–13–

Regarding HHO's payment of the purchase price, the Kaiser Companies argue HHO had not done everything it needed to with respect to its loan funding. HHO responds that it met all its obligations, and the fact that money did not exchange hands at closing was the fault of the Kaiser Companies. These arguments involve the Agreement of No Funding that HHO signed at closing.

The provision of the Agreement of No Funding at issue stated,

> Notwithstanding the execution of the Loan Documents, Borrowers and Guarantors acknowledge that there are certain requirements of the Loans outstanding at this time and certain issues that need to be resolved, including but not limited to, the following:
>
> 1. Seller agreement to execute all documents necessary to consummate the sale of the property . . .;
> 2. Lender's receipt and approval of the inventory count for the Harris County property that is part of the sale of the business;
> 3. Lender's receipt and approval of recorded UCC-3 Termination Statements from Bayview Loan Services, LLC [for a certain UCC-1 Financing Statement];
> 4. Lender's receipt and approval of an executed Release of Lien from Bayview Loan Services, LLC releasing Deed of Trust in the original principal amount of $380,000.000 . . . ;
> 5. Lender's receipt and approval of documentation confirming $1,000,000.00 life insurance coverage in place on the life of Nihaya Qaddura;
> 6. Lender's receipt and approval of an original recordable Warranty Deed executed by Frial Mrouh Atiyeh, as grantor, to HHO . . . as grantee, conveying real property in Dallas County, Texas commonly known as 13426 Floyd Circle, Dallas, Texas, 75234; and
> 7. Any other items as deemed necessary by the Lender.

Some of these items involved HHO's collateral for the loans.

Synergy Bank's Chief Lending Officer, William Jefferson Bachus, testified that he was familiar with the two loans in this case. Bachus testified the Agreement of No Funding meant that the loans were approved, but in order to close certain items need to be addressed. He says the bank does "no funding agreements" all the time for a variety of reasons, including outstanding items and clarification of issues. Bachus testified the bank asked for the agreement because the seller had not allowed the bank to do an inventory on the Houston property.

Bachus testified that all conditions for the loan had been met except for the ones the Kaiser Companies controlled, executing the closing documents and permitting the inventory count. The number one item to be resolved was that the seller had to execute all closing documents to consummate the sale. That never happened. The inventory was not done because HHO's representatives were kicked out of the store. According to Bachus, the other items had been taken care of. He saw an email that the lien was released and the preexisting debt paid off.

Shoukry also testified about the Agreement of No Funding. He said that of the seven items, the ones that were HHO's responsibility had been completed as of closing on March 30. Shoukry and Choudhury both indicated the loan was paid before closing date. Synergy Bank never told Shoukry it was not willing to fund the transaction.

The Kaiser Companies point to evidence that some of HHO's requirements were not met by the closing date. For example, the life insurance policy required for Nihaya, although effective March 27, 2015, was issued after closing date. Also, the executed release of lien from Bayview loan was dated after closing, on April 6, 2015. There was conflicting evidence on the issue of whether HHO's failure to tender payment was a result of actions by the Kaiser Companies. The jury was entitled to credit the evidence indicating that HHO did not tender payment because the Kaiser Companies had not met their responsibilities.

The Kaiser Companies also argue HHO failed to mutually agree on the inventory and that failure excused their breach. As discussed above, there was evidence the inventory did not take place because the Kaiser Companies kicked HHO out of the store and informed it the inventory would not be taking place. The Kaiser Companies blamed HHO for the failure of the inventory, claiming that HHO did not give them proper notice it would be there to review the inventory and that there was not enough time to complete the inventory before the closing date. We defer to the jury's determination regarding the credibility of this evidence. The evidence is sufficient to support the jury's finding that the Kaiser Companies' failure to comply with the contract was not excused.

Finally, the Kaiser Companies contend the evidence is legally insufficient to support the jury's finding in Question 4 that HHO's failure to tender payment was

excused by the Kaiser Companies' refusal to perform a material provision of the contract or repudiation of the contract. Their argument is premised on the idea that Question 4 was erroneous and thus we should evaluate this issue against the charge that should have been given. *See, e.g., St. Joseph Hosp. v. Wolff*, 94 S.W.3d 513, 530 (Tex. 2002) (because trial court submitted erroneous definition of joint enterprise over proper objection, we measure legal sufficiency of evidence under definition that should have been given). The Kaiser Companies proposed, but did not get, an instruction that would have required HHO to show tender of performance would have been "a useless act, an idle ceremony, or wholly nugatory." They argue HHO's tender of the purchase price would not have been a useless act. As will be discussed later in the opinion, the trial court gave a legally correct definition of repudiation in the charge. We need not evaluate whether tender of performance would have been a useless act. But given the Kaiser Companies' announcement that it would not close the deal and its failure to attend the closing, the evidence would support such a finding. The evidence is legally and factually sufficient to prove the Kaiser Companies refused to close the transaction and repudiated the contract in the days prior to the scheduled closing.

### Specific Performance

Next, the Kaiser Companies assert HHO was not entitled to specific performance for various reasons. We disagree.

Specific performance is an equitable remedy that may be awarded upon a showing of breach of contract. *Stafford v. S. Vanity Magazine, Inc.*, 231 S.W.3d 530, 535 (Tex. App.—Dallas 2007, pet. denied). A party suing for breach of a contract involving the sale of real estate must elect to sue for either money damages or specific performance. *Goldman v. Olmstead*, 414 S.W.3d 346, 361 (Tex. App.—Dallas 2013, pet. denied). If the party sues for damages, he has elected to treat the contract as terminated by the breach and to seek compensation for that breach. *Id.* If the party sues for the equitable remedy of specific performance, he affirms the contract and requests the trial court to effectuate the agreement. *Id.* To be entitled to specific performance, a plaintiff must plead and prove (1) compliance with the contract including tender of performance unless excused by the defendant's breach or repudiation, and (2) the readiness, willingness, and ability to perform at relevant times. *Smith v. Dass, Inc.*, 283 S.W.3d 537, 545 (Tex. App.—Dallas 2009, no pet.).

The Kaiser Companies first argue that because there was a "time is of the essence" provision in the contract, HHO had to *actually* tender payment to get specific performance. They rely on the case of *Wilson v. Klein*, 715 S.W.2d 814, 822 (Tex. App.—Austin 1986, writ ref'd n.r.e.), which states that when a contract specifies that time is of the essence, the buyer must make an actual tender of the purchase price to be entitled to specific performance. This is not a bright-line rule, however. This Court factually distinguished *Wilson* in *17090 Parkway, Ltd. v.*

*McDavid*, 80 S.W.3d 252, 256–57 (Tex. App.—Dallas 2002, pet. denied).    In *Wilson*, the buyer and seller had a dispute over how to calculate the purchase price of land under their contract.  The buyer sued for specific performance and offered to pay the higher price *if* the trial court decided that was correct.  The court found that the buyer had to actually tender the disputed price because the seller was prepared to convey the property.  *Id.*  In *McDavid*, we upheld a judgment awarding specific performance of a real estate contract with a time is of the essence provision where there was no actual tender.  We concluded that actual tender was excused, despite the time is of the essence provision because the seller openly refused to perform its part of the contract.  *Id.* at 257.  Here, where the Kaiser Companies expressed their intent not to close the contract and prevented HHO's lender from taking an inventory, actual tender was not required.

The Kaiser Companies also argue HHO is not entitled to specific performance because the evidence is legally and factually insufficient to support the jury's findings that HHO was ready, willing, and able to perform.  The jury was asked if HHO was ready, willing, and able to perform at three specific times—on or before March 31, 2015, at all times from April 1, 2015 through May 4, 2022, and today.  They answered "yes" for each time period.

The Kaiser Companies make several arguments about why the evidence in this issue is insufficient.  For one, they repeat their argument about the Agreement

of No Funding to assert that HHO never had the financing for the transaction. As previously discussed, there was sufficient evidence from which the jury could have determined that HHO had complied with its obligations under that document and the bank was ready to fund the transaction at the time of closing but for the Kaiser Companies' failure to meet their obligations. Further, Bachus with Synergy Bank testified the bank would fund the loan at the time of trial if the borrower's financial condition had not changed. And Choudhury indicated that in his role as broker he sometimes gets financing for his clients. He said he was willing and capable of getting the deal funded if HHO did not get funding from the bank. Shoukry also stated that he had the ability to buy the property. He had bank financing set up "as a backup."

Based on the premise that HHO did not have financing for the purchase, the Kaiser Companies also contend HHO had no evidence that it actually had the purchase money of $6.6 million at any of the times required by Question 3. Because there was sufficient evidence that HHO had financing for the transaction, we need not consider whether it proved it could pay cash for the transaction on its own.

Next, the Kaiser Companies make arguments that involve the SBA loan. The loan applicant on the SBA paperwork was a "Company to be Formed" or "CTBF." HHO later formed the new company, World Gourmet Houston, to operate the Houston store, and it was the borrower. The Kaiser Companies argue World

Gourmet Houston's financing cannot satisfy HHO's obligation to obtain financing. We cannot find where in the record the Kaiser Companies raised this argument in the trial court. *See Warren v. State Farm Lloyds*, No. 05-21-00970-CV, 2023 WL 2237079, at *3 (Tex. App.—Dallas Feb. 27, 2023, no pet.) (mem. op.) (setting out how to preserve legal and factual sufficiency challenges following jury trial). In any event, the evidence showed HHO was a family business, and both HHO and World Gourmet Houston were wholly owned by Nihaya. The jury could have determined that the loan to World Gourmet Houston was to pay the purchase price under HHO's contract with the Kaiser Companies.

Finally, the Kaiser Companies contend HHO was not ready, willing, and able to perform because there is no evidence the SBA loan was approved by the SBA. But Bachus testified his bank was a preferred lender with the SBA, known as a PLP lender. The SBA gives the bank approval authority. The loan was approved by the SBA when the bank approved it. We conclude the evidence is legally and factually sufficient to show that HHO was ready, willing, and able to perform.

In addition, the Kaiser Companies argue that HHO was not entitled to specific performance because the contract required HHO to submit the dispute to mediation before filing suit. They rely on the following provision in the contract:

> DISPUTE RESOLUTION: The parties agree to negotiate in good faith in an effort to resolve any dispute related to this contract that may arise. If the dispute cannot be resolved by negotiation, the parties will submit the dispute to mediation before resorting to arbitration or litigation and

will equally share the costs of a mutually acceptable mediator. This paragraph survives termination of this contract. This paragraph does not preclude a party from seeking equitable relief from a court of competent jurisdiction.

A condition precedent is an event that must happen or be performed before a right can accrue to enforce an obligation. *Aflalo v. Harris*, No. 05-21-01057-CV, 2023 WL 2522206, at *8 (Tex. App.—Dallas March 15, 2023, pet. denied) (mem. op). In construing a contract, forfeiture by finding a condition precedent is to be avoided when another reasonable reading of the contract is possible. *Id.* Reading the provision as a whole, a party may seek equitable relief from a court of competent jurisdiction without first submitting the dispute to mediation. *Id.* Here, HHO sought specific performance of the contract, an equitable remedy. A reasonable reading of the contract permits a suit for specific performance without first going to mediation. The Kaiser Companies have not shown that HHO was not entitled to specific performance.

**Lost Profits**

The Kaiser Companies also challenge the award of lost profits damages. They first challenge the sufficiency of the evidence of lost profits as if HHO had sought damages instead of specific performance. But they also assert that the methodology used by HHO's expert on lost profits, which was based on the Kaiser Companies' actual profits, was no evidence of the equitable monetary compensation appropriate in a specific performance case.

As stated, in a breach of contract case, the general rule is that damages constitute an alternative remedy available only when specific performance is not sought or is not available. *Paciwest, Inc. v. Warner Alan Props., LLC*, 266 S.W.3d 559, 575 (Tex. App.—Fort Worth 2008, pet. denied). However, in narrow circumstances, the relief associated with specific performance may include monetary compensation where it is necessary to place the parties in the same position as if the contract had been performed in full. *Scott Pelley P.C. v. Wynne*, No. 05-15-01560-CV, 2017 WL 3699823, at *14 (Tex. App.—Dallas Aug. 28, 2017, pet. denied) (mem. op.); *Goldman*, 414 S.W.3d at 361–62. The rationale for the compensation is that the contract is being enforced retrospectively and the equities are adjusted accordingly. *Goldman*, 414 S.W.3d at 362. Therefore, when a trial court orders specific performance of a contract to purchase real property, the court will enforce the equities in such a manner as to put the parties as nearly as possible in the position they would have occupied had the conveyance been made when required by contract. *Id.* To relate the performance back to the contract date, the trial court may equalize any losses occasioned by the delay by offsetting them with money payments for items such as profits. *Id.*; *Heritage Housing Corp. v. Ferguson*, 674 S.W.2d 363, 366 (Tex. App.—Dallas 1984, writ ref'd n.r.e.).

The jury charge asked the jury to determine the amount of money HHO was entitled to as if this was a breach of contract case in which the plaintiff elected

monetary damages instead of specific performance. *See, e.g., Saden v. Smith*, 415 S.W.3d 450, 460 (Tex. App.—Houston [1st Dist.] 2013, pet. denied). Question 5 asked, "What sum of money, if any, if paid now in cash, would fairly and reasonably compensate [HHO] for its damages, if any that resulted from [the Kaiser Companies'] failure to comply" with the contract? The jury was asked to consider "[l]ost profits that were a natural, probable, and foreseeable consequence of [the Kaiser Companies'] failure to comply." The charge defined "lost profits" as "the net profits of a business after deducting all expenses and costs." It further instructed that the amount of loss must be shown by "competent evidence with reasonable certainty." The jury determined that HHO's lost profits were $3,877,583, the amount provided by HHO's expert on damages.

HHO's expert was CPA Bryan Rice. Rice's analysis was based on the Houston store's actual profits after the closing date until the end of 2021. He analyzed financial statements for the grocery store and started with the store's reported pretax income for the years 2015 through 2021. He testified that, to get a truer measure of net income, he added back expenses that were discretionary on the part of the owner, such as Mashood's salary and charitable donations. He also added back interest expenses the store was incurring. The resulting number was adjusted reported pretax income. He prorated the amount for 2015 because HHO would not have owned the store for the whole year. Rice then reduced that amount by the

amount of interest HHO would have paid on their purchase loans. $3,887,583 was his opinion of HHO's lost profits as a result of not being able to acquire the grocery store. That amount reflects the normalized net income of the grocery store business from April 1, 2015 to December 31, 2021, less the interest HHO would have paid on its loans.

Rice believed his calculation met the definition of lost profits with reasonable certainty. He testified that his calculation was not a traditional lost profits analysis. This was more of a loss of opportunity. HHO did not get the opportunity to buy the grocery business. His calculation assumed HHO would have had the opportunity to make the same amount of profits as the Kaiser Companies. Rice did not look at HHO's business model. He did not think there was a need to compare the Houston business to the stores HHO operates. Rice stated, "The results of the business [HHO] wanted to buy speak for themselves, and that's pretty much the end of it." Rice thought it reasonable to assume HHO would have done mostly the same things as the Kaiser Companies.

While it was appropriate for HHO to recover both monetary compensation and specific performance, it was not appropriate for HHO to recover lost profits under a traditional lost profits analysis. HHO's monetary award was supposed to enforce the equities so as to put it as nearly as possible in the position it would have occupied had the conveyance been made when required by the contract. This is not

the question the jury was asked, and HHO's expert's methodology did not provide any evidence of an equitable accounting. It considered the actual profits made by the Kaiser Companies, with some adjustments. This was no evidence of the monetary amount that would put HHO in the position it would have been if HHO had acquired and operated the grocery store between April 1, 2015, and the end of 2021. *See Simmons v. White Knight Dev., LLC*, No. 10-21-00309-CV, 2023 WL 5624126, at *10 (Tex. App.—Waco Aug. 30, 2023, pet. filed) (mem. op.) (modifying judgment to delete monetary award in specific performance case where court awarded actual/consequential damages). As a result, we reverse and render judgment that HHO take nothing in damages for lost profits. We also delete the award of postjudgment interest on that amount.

**Alleged Jury Charge Error**

The Kaiser Companies next complain of alleged jury charge error in Questions 1 and 4. We conclude there was no error.

A trial court must submit in its charge to the jury all questions, instructions, and definitions raised by the pleadings and evidence. *Hyundai Motor Co. v. Rodriguez*, 995 S.W.2d 661, 663–64 (Tex. 1999). We review a trial court's decision to submit or refuse a particular instruction under an abuse of discretion standard. *Thota v. Young*, 366 S.W.3d 678, 687 (Tex. 2012). The trial court has considerable discretion to determine proper jury instructions, and if an instruction might aid the

jury in answering the issues presented to them, or if there is any support in the evidence for an instruction, the instruction is proper. *Id.*

Question 1 asked the jury if the Kaiser Companies failed to comply with the contract. It was accompanied with an instruction that a failure to comply must be material and the circumstances to consider in determining whether a failure to comply is material. The jury answered, "Yes."

The Kaiser Companies contend Question 1 presented a "classic *Casteel* problem." *See Crown Life Ins. Co. v. Casteel*, 22 S.W.3d 378 (Tex. 2000). In *Casteel*, the Texas Supreme Court ruled that when a single broad-form liability question commingles valid and invalid liability grounds and the appellant's objection is timely and specific, the error is harmful and a new trial is required when the appellate court cannot determine whether the jury based its verdict on an invalid theory. *Harris Cnty. v. Smith*, 96 S.W.3d 230, 232–33 (Tex. 2002); *Casteel*, 22 S.W.3d at 389. The Kaiser Companies argue they are entitled to a new trial because it is impossible to determine that the jury's verdict was actually based on a valid liability theory.

In their opening brief on this issue, the Kaiser Companies do not specify what invalid theory of breach of contract was submitted to the jury. This issue has thus not been adequately briefed. *See* TEX. R. APP. P. 38.1(i) (brief must contain a clear

–27–

and concise argument for the contentions made, with appropriate citations to authorities and to the record).

Nevertheless, it is apparent from their reply brief that their *Casteel* argument involves the inventory of the Houston store. *Casteel*'s presumed harm rule applies when a jury charge permits the jury to reach a finding based on a legally invalid theory or allegation presented to the jury. *Horton v. Kan. City S. Ry.*, 692 S.W.3d 112, 143 (Tex. 2024). In other words, the presumed-harm rule applies when a jury charge permits a jury to consider erroneous matters. *Id.* at 144; *Harris Cnty.*, 96 S.W.3d at 233. Here, the Kaiser Companies have not shown that Question 1 permitted the jury to consider an invalid theory of breach of contract. Although they assert HHO had two theories of breach of contract—failure to close and convey the property and refusing to permit it to conduct an inventory—HHO's only theory of breach of contract was that the Kaiser Companies breached the contract by failing to attend the closing and convey the property. Their pleadings did not allege the Kaiser Companies breached the contract by failing to permit an inventory. The Kaiser Companies raised the issue of the lack of inventory in their answer. They alleged a mutually agreed inventory was a condition precedent to HHO's right to enforce the contract. We conclude there is no *Casteel* error in this case.

Question 4 asked if HHO's failure to tender payment under the terms of the contract on or before March 31, 2015 was excused by the Kaiser Companies' refusal

to perform a material provision of the contract or repudiation of the contract, if any. The jury answered "Yes." As mentioned before, the Kaiser Companies contend the court erred by not including their definition of "repudiation" in connection with this question. They requested the following instruction:

> The refusal or repudiation must amount to making [HHO's] performance a useless act, idle ceremony, or wholly nugatory. It would require that the "situation of the property is such that an actual tender would have be a *useless act*, an *idle ceremony*, or *wholly nugatory*. For example, actual tender by a buyer was unnecessary when the seller had conveyed the property to a third person, placing the seller in default of his contract with the buyer.

The trial court denied the request.

The Kaiser Companies argue that without their requested instruction, the jury considered only the dictionary definition of repudiation. The charge contained an instruction on repudiation in connection with Question 2, however, which asked whether the Kaiser Companies' failure to comply with the contract was excused. The charge instructed: "A party repudiates an agreement when he indicates by his words or actions, that he is not going to perform his obligations under the agreement in the future, showing a fixed intention to abandon, renounce, and refuse to perform the agreement." This instruction was an accurate statement of the law. *See Harrison*, 2024 WL 4457019, at *5; *Hunter*, 339 S.W.3d at 802. We cannot conclude it was error for the trial court to refuse to give the Kaiser Companies' requested instruction.

–29–

## Exclusion of Witnesses

The Kaiser Companies also complain of the trial court's exclusion of three witnesses they wanted to present, Henry Ackels and two experts. We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Fleming v. Wilson*, 610 S.W.3d 18, 21 (Tex. 2020). A party who fails to make, amend, or supplement a discovery response, including a required disclosure, in a timely manner may not offer the testimony of a witness who was not timely identified unless the court finds that there was good cause for the failure to timely make, amend, or supplement the discovery response, or the failure will not unfairly surprise or unfairly prejudice the other party. TEX. R. CIV. P. 193.6(a). The burden of establishing good cause or lack of unfair surprise or prejudice is on the party seeking to call the witness. *Id.* 193.6(b).

Ackels was an attorney for the Kaiser Companies when the contract was supposed to close in 2015 and when the lawsuit was filed, but he withdrew from the case in 2020, well before the April 2022 trial. HHO initially designated him as a fact witness and filed a motion to compel his deposition. The Kaiser Companies opposed him being deposed and the trial court agreed with them. In October 2018, ahead of an earlier trial setting, the Kaiser Companies, through Ackels, filed a Motion in Limine asking the trial court to prohibit HHO from calling him as a

witness for the same reasons the court denied HHO's request to take his deposition. The trial court granted the motion.

After the Kaiser Companies indicated during the April 2022 pretrial conference that they were going to call Ackels as a fact witness, HHO filed a motion to exclude his testimony. It asserted the Kaiser Companies were estopped from calling Ackels as a witness because they had previously precluded HHO from deposing him and argued he could not be called as a fact witness. HHO also argued that the Kaiser Companies had not designated Ackels as a fact witness, only as an expert witness on attorney's fees. Finally, HHO noted that all parties had previously agreed to exclude undisclosed lay witnesses.

In their written response, the Kaiser Companies argued HHO had used Ackels's alleged statements and his emails to its advantage and had opened the door to his testimony. They therefore asserted he should be permitted to testify as a rebuttal witness. They further argued that there was good cause to allow his testimony and HHO would not be prejudiced. The trial court ruled that Ackels would not be allowed to testify, noting the Kaiser Companies had "vigorously thought that he was not a fact witness" and could not change their mind about that at the time of trial. The Kaiser Companies made an offer of proof regarding his testimony.

The Kaiser Companies characterized Ackels as a rebuttal witness, suggesting that his testimony could not have been anticipated before trial. *See* TEX. R. CIV. P.

–31–

192.3(d) (party not required to disclose in discovery identity of rebuttal witness the necessity of whose testimony cannot reasonably be anticipated before trial). They argue that while they initially thought Ackels was not a fact witness because of the attorney–client relationship, that "changed at trial, given the death of the principal, Mr. Kaiser" and Ackels "became a fact witness" during trial. Mashood died in 2019, and Ackels withdrew from the case in 2020, both long before trial. HHO notes that the Kaiser Companies' most recent disclosures were in 2021 and did not designate Ackels as a fact witness. Under these circumstances, where the Kaiser Companies resisted Ackels's designation as a fact witness for years, could have anticipated the need for his testimony well before trial, and failed to update their disclosures, the trial court did not abuse its discretion in excluding Ackels's testimony.

Next, the Kaiser Companies contend the trial court erred in excluding two expert witnesses, John Hart and Alan Tolmas, on grounds they were not timely designated. The Kaiser Companies wanted Hart to testify about SBA loans and Tolmas to testify about lost profits.

On November 3, 2021, HHO filed a motion to strike Hart and Tolmas because they were not timely designated. HHO asserted the trial court's February 3, 2017 Amended Docket Control Order required all experts to be designated by June 15, 2017, and Hart and Tolmas were not designated until September 30, 2021. In addition, the Kaiser Companies failed to produce reports for the new experts and the

time for expert witness depositions had passed. HHO argued the Kaiser Companies could not establish good cause for their failure to timely designate the experts or establish the lack of unfair surprise or prejudice.

On appeal, the Kaiser Companies argue the 2017 scheduling order was ineffective as a matter of law. The case was set for trial in September 2017, but due to Hurricane Harvey, it was rescheduled for March 2018, and later rescheduled multiple times. The Kaiser Companies contend that when the trial court granted a continuance, it nullified the prior discovery deadlines and therefore the trial court abused its discretion in using those deadlines to exclude the experts.

In their response to HHO's motion, however, the Kaiser Companies did not make this argument. They argued only that there was no unfair surprise or prejudice because they designated the experts more than six months before trial and HHO could have sought their depositions. They did not inform the trial court that they believed the scheduling order deadline for expert designation was a nullity. There is nothing in the record to show that the trial court considered its prior deadlines to be null. As a general rule, a party is required to present a complaint to the trial judge before being allowed to raise the issue on appeal. *Gumble v. Grand Homes 2000, L.P.*, 334 S.W.3d 1, 4 (Tex. App.—Dallas 2007, no pet.); *see* TEX. R. APP. P. 33.1. We conclude the Kaiser Companies have not preserved error in the exclusion of their two experts for appellate review.

–33–

While the Kaiser Companies have not expressly argued on appeal that the court should have allowed the witnesses to testify because there was no unfair surprise or prejudice, in their harm analysis, they mention that HHO could not have been unfairly surprised by either witness due to the subject matter of their testimony. The fact that a party needs an expert for its defense does not establish that other parties will not be unfairly surprised by the late designation of an expert. *PopCap Games, Inc. v. MumboJumbo, LLC*, 350 S.W.3d 699, 718 (Tex. App.—Dallas 2011, pet. denied). Nor does offering other parties the opportunity to depose a late-designated expert ensure the absence of unfair surprise or prejudice. *Id.* It was within the trial court's discretion to determine that permitting these experts to testify would unfairly surprise or prejudice HHO. In addition, because we have determined that the award of lost profits damages should be reversed, the Kaiser Companies cannot demonstrate that they were harmed by the inability to call Tolmas on the issue of lost profits.

## Choudhury's Right to Recover on the Contract

Next, the Kaiser Companies challenge the relief granted to Choudhury. They do not challenge the jury's finding that he was a third-party beneficiary to the contract. The Kaiser Companies argue he needed to obtain additional findings that they breached contractual duties to him, that he performed all that was required of

him, and that any breach caused him damages, and because he did not, he waived his right to relief.

A person who is not a party to a contract may sue for damages caused by its breach if the person qualifies as a third-party beneficiary. *First Bank v. Brumitt*, 519 S.W.3d 95, 102 (Tex. 2017). A person seeking to establish third-party beneficiary status must demonstrate that the contracting parties intended to secure a benefit to that third party and entered into the contract directly for the third party's benefit. *Id.* Choudhury did not allege the Kaiser Companies breached a contract with him; he alleged he was the third-party beneficiary of the contract between HHO and the Kaiser Companies. HHO obtained findings that the Kaiser Companies breached the contract between them without excuse. It was not necessary for Choudhury, a non-party to the contract, to obtain additional findings.

## Attorney's Fees and Interest

Finally, the Kaiser Companies contend that we should reverse the awards of attorney's fees and interest to HHO and Choudhury. They make several arguments about attorney's fees, and they are supported by minimal argument and authorities.

In light of our resolution of their prior issues, we need not address the Kaiser Companies' argument that HHO and Choudhury are not entitled to attorney's fees and interest on those fees because they are not prevailing parties. *See Dairyland Cnty. Mut. Ins. Co. v. Childress*, 650 S.W.2d 770, 775 (Tex. 1983) (third-party

beneficiary who could enforce contract to which he is not party may also sue for attorney's fees under civil practice and remedies code § 38.001); *see Fidelity & Dep. Co. of Md. v. Concerned Taxpayers of Lee Cnty., Inc.*, 829 S.W.2d 923, 928 (Tex. App.—Austin 1992, no writ).

The Kaiser Companies complain about the attorney's fees declarations submitted by HHO and Choudhury. First, they argue that HHO's declaration improperly purports to establish the reasonableness of fees billed in this case by HHO's prior law firm. To prove its attorney's fees, HHO offered a declaration from its attorney Jennifer Richards and billing records. Richards stated she had personal knowledge of the legal work performed on HHO's behalf in this case and was qualified to testify about the usual and customary, reasonable and necessary fees for the work performed. She reviewed the billing statements of the prior firm. Richards stated the attorney's fees reflected in the billing statements of her firm and those charged by HHO's prior legal counsel were reasonable and necessary. In addition, Richards segregated the fees that were incurred solely in connection with a tort claim against a prior defendant. Richards gave her declaration as an expert on attorney's fees, and an expert is not required to have personal knowledge of the matters about which she testified. *See McCafferty v. McCafferty*, No. 05-16-00587-CV, 2017 WL 3124470, at *4 (Tex. App.—Dallas July 24, 2017, no pet.) (mem. op.). An expert

on attorney's fees may review another attorney's file and offer an opinion that the fees charged for the work were reasonable and necessary. *Id.*

The Kaiser Companies contend HHO did not actually segregate HHO's fees for contract and tort claims. But they provide no explanation for their contention. Richards's declaration specifies which fees were not included because they were incurred for the tort claim. Further, the attached billing records highlights those fees. The Kaiser Companies' contention lacks merit.

The Kaiser Companies also assert the affidavit by Choudhury's attorney in support of his fees "fails to segregate fees except in a conclusory manner." They fail to specify in what way the affidavit was conclusory. They merely cite the *Rohrmoos* case which provides, "General, conclusory testimony devoid of any real substance will not support a fee award." *Rohrmoos Venture v. UTSW DVA Healthcare, LLP*, 578 S.W.3d 469, 501 (Tex. 2019). Choudhury's attorney's affidavit segregates attorney's fees into categories by cause of action, and we do not find the segregation to be conclusory.

Next, the Kaiser Companies argue that in the event of a partial rendition, we are required to reverse the fee award so proper segregation of claims can occur. HHO and Choudhury have segregated their fees as explained above. The Kaiser Companies do not specify what further segregation would need to occur.

In addition, the Kaiser Companies contend both fee declarations fail to analyze the factors Texas courts use in determining the lodestar reasonableness and necessity of fees. *See id.* at 501–02. Under the lodestar method, the first step in determining a reasonable attorney's fee is to determine the reasonable hours spent by counsel and a reasonable hourly rate. *Id.* at 501. The product of these amounts is the lodestar and it is presumptively reasonable. *Id.* at 496. The factfinder may adjust the lodestar up or down if relevant factors indicate an adjustment is necessary to reach a reasonable fee. *Id.* at 501. Here, it appears counsel for HHO and Choudhury sought only their base lodestar, and the Kaiser Companies do not contend otherwise. We cannot conclude any other factors needed to be analyzed in the fee declarations.

Finally, the Kaiser Companies challenge the awards of interest in the judgment. As stated, because we are reversing and rendering judgment to delete the award of lost profits damages, we likewise delete the award of postjudgment interest on the lost profits damages.

The Kaiser Companies contest the award of interest to Choudhury on his broker's commission. The judgment awards Choudhury prejudgment interest on his $850,000 commission at a rate of 6% from May 1, 2015 to the date of judgment, May 27, 2022, for a total of $304,253.42. It also awards him postjudgment interest on the $850,000 broker's fee and on the $304,253.42 prejudgment interest, as well

as on his attorney's fees and costs. The Kaiser Companies contend Choudhury is not entitled to interest on the commission because the condition precedent for his broker's fee has not been met. We agree that the award of interest to Choudhury on the amount of his commission is improper. Under the contract, the Kaiser Companies were required to pay Choudhury $850,000 out of the proceeds they received after the closing. The judgment does not directly award Choudhury $850,000; it orders the Kaiser Companies to pay him his commission from the sales proceeds after closing, as the contract specified.

Choudhury responds that because this was a specific performance case, the trial court could award prejudgment interest to enforce the equities and put him in the position he would have been in had the contract been performed. While a trial court may award equitable prejudgment interest on a monetary award grounded in specific performance, *see Great Western Drilling, Ltd. v. Pathfinder Oil & Gas, Inc.*, No. 11-14-00206-CV, 2020 WL 373096, at *12 (Tex. App.—Eastland Jan. 23, 2020, pet. dism'd) (mem. op.), here there is no monetary award to Choudhury for his commission. The trial court calculated interest on $850,000, but the judgment did not award Choudhury $850,000. But because there was no monetary award to Choudhury for his commission, there can be no pre- or postjudgment interest earned on the amount of the commission. We conclude the trial court abused its discretion in awarding Choudhury interest on $850,000. We reverse that portion of the trial

–39–

court's judgment and render judgment deleting the award of $304,253.42 in prejudgment interest and deleting the award of postjudgment interest on the $850,000 broker's commission and on the $304,253.42 prejudgment interest.

## Conclusion

In summary, we affirm in part and reverse and render in part. We reverse the award of lost profits damages in the amount of $3,877,583 to HHO and render judgment deleting that award, along with postjudgment interest on that amount. We reverse the award of interest to Choudhury on his broker's commission and render judgment deleting the award of $304,253.42 in prejudgment interest and deleting the award of postjudgment interest on the $850,000 broker's commission and on the $304,253.42 prejudgment interest. In all other respects, we affirm the trial court's judgment.

/Amanda L. Reichek//

221160f.p05
AMANDA L. REICHEK
JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

WORLD FOOD IMPORTS, INC., AND KGF WORLD FOOD WAREHOUSE, INC., Appellants

No. 05-22-01160-CV     V.

HHO UNITED GROUP, INC., AS ASSIGNEE OF NIHAYA QADDURA AND SHARIF CHOUDHURY, Appellees

On Appeal from the 191st Judicial District Court, Dallas County, Texas Trial Court Cause No. DC-15-05428. Opinion delivered by Justice Reichek. Justices Partida-Kipness and Breedlove participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED** in part and **REVERSED** in part. We **REVERSE** that portion of the trial court's judgment awarding lost profits damages to HHO United Group, Inc. in the amount of $3,877,583 and **RENDER** judgment deleting that award, as well as the postjudgment interest on that amount. We **REVERSE** that portion of the trial court's judgment awarding prejudgment interest to Sharif Choudhury in the amount of $304,253.42 and **RENDER** judgment deleting that award. We **REVERSE** that portion of the trial court's judgment awarding Sharif Choudhury postjudgment interest on his broker commission of $850,000 and on his award of $304,253.42 prejudgment interest and **RENDER** judgment deleting those awards. In all other respects, the trial court's judgment is **AFFIRMED**.

It is **ORDERED** that appellees HHO United Group, Inc., as assignee of Nihaya Qaddura, and Sharif Choudhury recover their costs of this appeal and the full amount of the trial court's judgment, as modified by this Court, from appellants World Food Imports, Inc., and KGF World Food Warehouse, Inc. and from the cash deposits in lieu of supersedeas bond. After all costs have been paid, the clerk of the

District Court is directed to release the balance, if any, of the cash deposits to World Food Imports, Inc. and KGF World Food Warehouse, Inc.

Judgment entered this 23rd day of October, 2024.